**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER 17-20253-CR-MORENO**

**UNITED STATES OF AMERICA,**

|                    | |                      |
|--------------------|-|----------------------|
| Plaintiff,         | | **Courtroom 13-3**   |
| vs.                | | **Miami, Florida**   |
| **SEGUNDO ORLANDO MOREANO BLANDON,** | | **July 19, 2017** |
| **ELIODORO VALOIS MOSQUERA and** | | |
| **ALFONSO ANGULO MOSQUERA,** | | |
| Defendants.        | | |

═══════════════════════════════════════════════

**SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

═══════════════════════════════════════════════

**APPEARANCES:**

**FOR THE GOVERNMENT:**       **JOSEPH M. SCHUSTER, AUSA**
                              United States Attorney's Office
                              99 Northeast Fourth Street
                              Miami, Florida 33132
                                                  305-961-9336
                                            Fax: 305-530-7976

**FOR DEFENDANT BLANDON:**    **RAYMOND D'ARSEY HOULIHAN, III, AFPD**
                              Federal Public Defender's Office
                              150 West Flagler Street
                              Suite 1700
                              Miami, Florida 33130
                                                  305-530-7000
                                            Fax: 305-536-4559

**FOR DEFENDANT VALOIS**
**MOSQUERA:**                 **DAVID A. DONET, JR., ESQ.**
                              Donet, McMillan & Trontz, PA
                              3250 Mary Street
                              Suite 406
                              Coconut Grove, Florida 33133
                                                  305-444-0030
                                            Fax: 305-444-0039

**FOR DEFENDANT ANGULO**
**MOSQUERA:**                    **ARNALDO J. SURI, ESQ.**
                                Law Offices of Arnaldo J. Suri
                                9745 Southwest 77th Street
                                Miami, Florida 33173
                                                305-596-4107
                                            Fax: 305-596-4515

**REPORTED STENOGRAPHICALLY**
**BY:**                          **GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C**
                                Official United States Court Reporter
                                Wilkie D. Ferguson Jr. US Courthouse
                                400 North Miami Avenue - Suite 12-2
                                Miami, Florida  33128  305.523.5118
                                gphofficialreporter@gmail.com

**TABLE OF CONTENTS**

Page

Reporter's Certificate ...................................... 23

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |
| (None) | | | | |

(The following proceedings held at 11:31 a.m. were interpreted to all defendants:)

THE COURT: 17-20253-Criminal, United States of America versus Orlando Moreano, Eliodoro Valois and Alfonso Angulo.

On behalf of the United States of America, who do we have?

MR. SCHUSTER: Good morning, Your Honor. Joseph Schuster for the United States.

THE COURT: On behalf of each defendant.

On behalf of Moreano Blandon, who do we have?

MR. HOULIHAN: Good morning, Your Honor. D'Arsey Houlihan, Assistant Federal Public Defender on behalf of the Mr. Moreano Blandon.

THE COURT: On behalf of Valois Mosquera?

MR. DONET: Good morning, Your Honor. David Donet, Jr., on behalf of Mr. Mosquera who's present before the Court.

THE COURT: On behalf of Alfonso Angulo Mosquera?

MR. SURI: Thank you very much, Your Honor. Good morning.

THE COURT: It is still the morning. Don't look at the clock.

MR. SURI: Arni Suri on behalf of Alfonso Mosquera who's here before the Court with the aid of the interpreter. Good to see you, sir.

THE COURT: Okay. It's only half an hour, I know, but

we'll catch up.  We'll catch up.

Okay.  Probation Officers, please.

THE PROBATION OFFICER:  Good morning, Your Honor. Mercedes Sornoza on behalf of US Probation.  Here with me, a new colleague, Brittney Allen.

THE COURT:  Welcome.

PROBATION OFFICER 2 (Ms. Allen):  Thank you.

THE COURT:  And the interpreters will state their names.  They haven't changed their names yet since this morning, but I still need to hear it for this record.

THE INTERPRETER:  Good morning, Your Honor.  Consuelo Burranca and Andrea Chacon Batres.

THE COURT:  Thank you for being here.

Okay.  As you all know, when we have a Presentence Investigation Report for one defendant, right -- we have it for the other one, too?

THE COURTROOM DEPUTY:  I think so.

THE COURT:  I have for two.  Do we have one for the third?

THE COURTROOM DEPUTY:  Let me check.  There was one this morning.

THE COURT:  Okay.  Give it to me.

I have the one that I've read for Eliodoro Valois Mosquera and for Segundo Orlando Moreano Blandon, but of course, the nature of the offense and those facts and the computation is

the same for the three defendants.  We'll wait for third one and I'll read that one.

So let me start with Segundo Orlando Moreano Blandon.

Mr. Moreano, I have read the report that says an adjusted offense level 35, Criminal History Category III in a 493 kilograms of cocaine case.

Are there any objections from the Government?

MR. SCHUSTER:  Your Honor, no, no objections from the Government.

THE COURT:  Mr. Moreano, did you get the chance to go over the Presentence Investigation Report with the help of an interpreter with your lawyer?

DEFENDANT MOREANO:  Yes, Your Honor.

THE COURT:  Okay.  So the guidelines are 210 to 262 months.  Any objections from the defense?

MR. HOULIHAN:  Judge, there's an objection and I apologize, I should have filed an objection and request for a minor role given the amendments to the Sentencing Guidelines and the role.  All of these offenses have been an amended.

THE COURT:  Why don't you use the lectern?  It makes it easier for the -- your client can sit there.

I have Eliodoro Valois and I have Moreano, so I need the third one.

THE COURTROOM DEPUTY:  The third one.

MR. HOULIHAN:  Judge, it's an oversight on my part.

THE COURT: You want minor role. Why is he deserving of a minor role? Did he do this before?

MR. HOULIHAN: He was involved in a conspiracy before but not something like this. It was sort of a more sophisticated operation.

THE COURT: Well, that means how can someone be a minor role the second time around?

MR. HOULIHAN: Because he's in a less sophisticated operation.

THE COURT: But he should have known more, right?

MR. HOULIHAN: Well, possibly, Judge, but what we have here -- I mean, you've seen a lot of these cases. I've had an awful lot of them see recently.

THE COURT: Usually, it's not the second time.

MR. HOULIHAN: No, that is rare and his guidelines are substantially higher as a result.

THE COURT: Well, are they substantially higher?

MR. HOULIHAN: They are substantially higher.

THE COURT: What did he get in 2004?

MR. HOULIHAN: 135 months.

THE COURT: Well, what do you think he should get now?

MR. HOULIHAN: 120 months.

THE COURT: He should get less the second time around?

MR. HOULIHAN: Yes, Judge.

THE COURT: Wow.

MR. HOULIHAN: The prior offense -- I mean, it's sort of like saying somebody convicted of murder gets 20 years and then he gets convicted of battery later and should get 30 years.

THE COURT: Well, sometimes people who get acquitted of murder and get charged with robbing something do get more time. That's happened even if you get acquitted.

MR. HOULIHAN: Sure, but --

THE COURT: So if you get convicted, it definitely should count, shouldn't it?

MR. HOULIHAN: I think if somebody is convicted of something that is very, very serious and they get a lot of time and they're subsequently convicted of something less serious, they shouldn't necessarily get more time.

THE COURT: Okay.

MR. HOULIHAN: The prior case involved transportation of, you know --

THE COURT: Cocaine, a vessel.

MR. HOULIHAN: A vessel with a thousand kilos of cocaine.

THE COURT: And this case is about what, a vessel?

MR. HOULIHAN: This case is about a panga. This case is about --

THE COURT: A what?

MR. HOULIHAN: A panga, P-a-n-g-a.

THE COURT: Which is what?

MR. HOULIHAN: It's an outboard, it's a little open outboard boat.

THE COURT: And a vessel, too, right? The definition of a vessel, it depends on the size. It's a smaller boat with 493 kilograms of cocaine instead of a thousand in a big boat.

MR. HOULIHAN: No, the other incident involved multiple deliveries of cocaine that was secreted in hidden compartments on this larger fishing vessel. This is a sort of operation where the drug dealers take people that are essentially -- that they don't know anything.

THE COURT: But he knows, see, that's the problem I have in this case because he's done it before.

MR. HOULIHAN: These folks don't know anybody involved in the chain of command, they don't have an ownership interest in the narcotics. They're paid a modest amount of money to them. You know, my client was making $200 a month as a farmer.

THE COURT: Sometimes it's better to be a $200 a month farmer than a defendant of 10, 20 years in prison, don't you think?

MR. HOULIHAN: I would disagree only --

THE COURT: Really?

MR. HOULIHAN: -- insofar as you say sometimes. I would say all of the time.

THE COURT: All the time, I agree, but he got 135 months.

MR. HOULIHAN: I understand that, Judge, for a more serious case. If he's engaged in activity that is less serious, then I would say that less time would be appropriate.

Additionally, he's going to be facing -- or not going to be -- he is facing an additional sentence in the other district for a supervised release violation with the potential for -- well, 30 to 37 is the guidelines, but of course, the Judge can go up from there. We have no sort of expectation as to what's going to happen with that case. You know, I mean, look, it's not a good situation for Mr. Moreano to be in, but I do think that sort of reflexively saying -- and I can understand your concern, your inclination, at least, with what appears to be an inclination with regard to this, but I do, you know, think if this were a case involving conduct that was of equal severity or a similar sort of severity, then I think I would have a more difficult argument. But the case where he got 135 months involved a much more extensive operation.

THE COURT: He was treated too leniently.

MR. HOULIHAN: No, no, I think he was probably treated too harshly there. I mean, but that's my nature --

THE COURT: Didn't he get the bottom of the guidelines?

MR. HOULIHAN: I believe he did, but the guidelines are --

THE COURT: That can't be too harsh then, if it's the bottom.

MR. HOULIHAN: I think there are some people who would say that the guidelines are too harsh, Judge, but be that as it may, he got a guideline sentence for an offense that was much more sophisticated, involved more people, involved substantially more narcotics.

THE COURT: What is the Government's position?

MR. SCHUSTER: Your Honor, that no minor role is required here.

THE COURT: What should be the sentence?

MR. SCHUSTER: The low end of the guidelines.

THE COURT: What say the Probation Officer?

THE PROBATION OFFICER: The low end of the guideline, Your Honor.

THE COURT: What say Mr. Moreano? What do you want to say before I sentence you, sir?

DEFENDANT MOREANO: Your Honor, I would ask the United States for forgiveness for the crime I've committed. I am here and I appear before you for the crime that I committed. I know that everything has a reason and everything has a reason, there is a reason for things that are done. So I did my time in prison. I am aware of that. And I left prison and I started working in the little farm that my wife has and then my daughter fell sick. That was the reason why I did this because my daughter was ill and that illness cost a lot of money. The condition she has is Hashimoto's thyroid condition,

and that was the reason why my daughter had to leave university because she was very ill. Her condition required a lot of money and we were not in a position to pay for that, that needed insurance and she didn't have insurance. This is why I made this decision to do this out of desperation because my daughter was doing really very, very badly. Even though I knew of the situation I was placing myself in, this was the sole opportunity to help.

THE COURT: All right. Well, I'm very sympathetic about your daughter's situation, Maria Victoria, who's 19, lives with her mother, attended the Technological University of Pereira, and I'm very sorry that she was recently diagnosed with the thyroid disease about which you speak.

But as you mentioned, that was something that you decided. I think you would be better off being with your daughter than being in prison, but I'm not going to go below the guidelines because you were released from the 135-month sentence imposed in the Middle District of Florida in Tampa on June 11th, 2013, and we are from 2017 now. But I do think a sentence at the low end of the guidelines is appropriate.

Therefore, it is the judgment of this Court that you, Segundo Orlando Moreano Blandon, be committed to the custody of the Bureau of Prisons to the bottom of the guidelines, the low end, 210 months, 17 years and four months, I believe that is. No, 17 years and 6 months, I think it is, no? Yeah, not four

months.  210 months.

Upon release from imprisonment, you'll be removed again to Colombia.  You cannot re-enter the United States and it's $100 special assessment and no fine.

Now that I have imposed the sentence, are there any objections to the findings of fact, conclusions of law, manner of imposition of sentence or reasonableness, from the Government?

MR. SCHUSTER:  No, Your Honor, and we move to dismiss Count 2.

THE COURT:  Granted.

From the defense?

MR. HOULIHAN:  Yes, Judge, we believe that a minor role would be appropriate.

THE COURT:  Okay.  I'm going to reject that in particular because of the prior offense.  He didn't have equity interest.  I know he's poor, but in the exercise of my discretion, the fact that he's knowledgeable about it does not make him a minor player.  He is not a major player.  He's just a regular player.  Instead of 1,000 kilograms or 2,000 kilograms of cocaine like the last time, it's 493.  But just because you're poor and you're doing it for medical attention for one of your children.  Doesn't automatically make you a minor player, and I would have no objection to the Middle District Judge giving him a concurrent sentence for supervised release.  That's

up to him or her, whoever the Judge is.

You can file the Notice of Appeal, if you want, within 14 days, if your client wants.

Thank you.

MR. HOULIHAN: Thank you, Judge.

THE COURTROOM DEPUTY: You amending supervised release?

THE COURT: Yes, Supervised release, but he'll be removed.

Let me go to Eliodoro Valois Mosquera. The Presentence Investigation Report, which I've read, is an adjusted offense level of 33, Criminal History Category I, guidelines 135 to 168 months.

Mr. Valois, I've read and reviewed the Presentence Investigation Report. Did you get a chance to do that with an interpreter and your lawyer? I'm sorry, I couldn't hear you.

DEFENDANT VALOIS MOSQUERA: Yes, Your Honor.

THE COURT: Okay. Any objections from the Government?

MR. SCHUSTER: No, Your Honor.

THE COURT: From the defense?

MR. DONET: Your Honor, I didn't file it in writing, however, I would ask that Your Honor consider minor role.

THE COURT: I will, based upon what he did in this case, I think it's appropriate under Rodriguez De Varon.

Therefore, instead of 33, it will be 31, 31 with Criminal History Category I. In this particular case, we're

talking about -- well, it would be 108 to 135, but there's a minimum mandatory of 120, so it's 120 to 135 months.

Any other objections?

MR. DONET: No, Your Honor.

THE COURT: What is the Government's recommendation with the new guidelines of 120 to 135 months?

MR. SCHUSTER: Your Honor, we'd recommend low end of the guidelines, 120 months.

THE COURT: I'll do that. What is defense counsel's recommendation?

MR. DONET: The lowest possible sentence, Your Honor, which is 120 months.

THE COURT: Which is 10 years.

So what do you want to say, Mr. Valois?

DEFENDANT VALOIS MOSQUERA: Your Honor, first of all, I would like to say that I apologize for the crime committed and as everybody can see, I am a poor individual. I am the father of six children, so it's been very hard for me to be the support for my home, and this is what made me commit this mistake.

THE COURT: All right. Well, after having heard from all parties, it is the judgment of this Court that you, Eliodoro Valois Mosquera, be committed to the custody of the Bureau of Prisons for 10 years, minimum mandatory. Upon release from imprisonment, you'll be placed on supervised release for five years. You'll be removed to your home country, and you cannot

ever re-enter the United States for any reason whatsoever.  So you'll go back to Colombia.  $100 special assessment and five years supervised release.

Now that I have imposed the sentence, which is the least that I can, any objections to the findings of fact, conclusions of law, manner of imposition of sentence or reasonableness, from the Government?

MR. SCHUSTER:  No, Your Honor.

THE COURT:  From the defense?

MR. DONET:  No, sir.

THE COURT:  Do you wish to appeal?  This is the least that I can give you, Mr. Valois Mosquera.  Do you wish to appeal this 10-year sentence?

DEFENDANT VALOIS MOSQUERA:  Yes, Your Honor.

THE COURT:  Well, it's between you and your lawyer. Your lawyer has preserved nothing because I cannot give you less than 10 years.  Do you understand?  That's the least that I can give you under the law.  Do you understand that?

DEFENDANT VALOIS MOSQUERA:  Yes, Your Honor.

THE COURT:  Well, if you were to file an appeal, I couldn't give you less than that.  You talk with your lawyer and he can discuss it with you.  If you still decide that you want to do that, you have to file a Notice of Appeal, but then he would have to file what we call an Anders Brief saying there's nothing to appeal.  So I'll leave it to the two of you.

MR. SCHUSTER:  Your Honor, I would note that there's an appellate waiver as well.

THE COURT:  Plus you gave up the right to appeal, so I think it's not going anywhere, but I'll leave that to you all.

MR. DONET:  I'll speak to him, Your Honor, and explain to him everything.

THE COURT:  Yeah.  Thank you.

THE PROBATION OFFICER:  Your Honor, question.  Would you want the PSI revised to reflect the minor role?

THE COURT:  Yes, I would, of course, because it lowers the guidelines to 120.

Alfonso Angulo Mosquera:  I've read the Presentence Investigation Report that is provided by the Probation Officer which includes a prior record, conspiracy to possess cocaine, and in this particular case, the Probation Officer says the guidelines are what?

PROBATION OFFICER 2:  Your Honor, there is a mistake that was pointed out prior to the commencement of this hearing. The total offense --

THE COURT:  I just want to know what the guidelines are.

PROBATION OFFICER 2:  The guidelines are 188 to 235 months.

THE COURT:  Based upon?

PROBATION OFFICER 2:  An offense level of 35.

THE COURT: Thirty-five, and the difference between this one and the first defendant is what?

MR. SURI: He's not on supervised release, Judge.

PROBATION OFFICER 2: Correct.

THE COURT: The age. He was released back in 2005 and supervised release was terminated when he was removed back in March of 2014.

MR. SURI: Your Honor, may I have a moment?

THE COURT: You can have as many moments as you want.

MR. SURI: Thank you, Your Honor. I appreciate that. I just wanted to clarify something.

THE COURT: Mr. Angulo, you went through the report with the interpreters or with your lawyer who speaks Spanish, too; is that right?

DEFENDANT ANGULO MOSQUERA: Yes, Your Honor.

THE COURT: So in this case, the guidelines are 188 to 235 months. Any objections from the Government?

MR. SCHUSTER: No, Your Honor.

THE COURT: From the defense?

MR. SURI: No, Your Honor. Just to clarify, I did file an acceptance statement. I was out about five weeks with surgery.

THE COURT: Is that included in it?

MR. SURI: I'm sure it was. And the criminal history was correct, from Category III to Category II, based on my

objections.

The only thing that's changed is the fact that he's not eligible for safety valve. However, I wanted to let the Court know that he has made a safety valve statement in the form of debriefing with agents in this case. Mr. Schuster is aware of that.

THE COURT: Do you agree with that?

MR. SCHUSTER: Yes, Your Honor.

THE COURT: What do you think I should do with that?

MR. SCHUSTER: At this point, nothing, Your Honor, but we may be before Your Honor at a later date.

THE COURT: Is there an expectation of a Rule 35?

MR. SCHUSTER: That's fair to say, but there are a couple of other things in the mix, so we would probably be before Your Honor at some point.

MR. SURI: I'm going to be a little more clear, especially since the codefendants -- that's what I needed to talk to my client about. He cooperated immediately within the context of the case. In other words, he was prepared to testify against the others in this case and Mr. Schuster let the other attorneys know that immediately -- so we have cooperation within this case.

In addition to that, I expect he's going to be able to cooperate based on the debriefing that we had, which was one of the most productive I've ever had with a client, with respect to

at least one other case and perhaps another case.  So I expect that he will be back.  However, I do have a petition with respect to that, and it is that I think the Court can take into consideration, despite a formal Rule 35 or 5(k) motion on the part of the Government, at this point and consider the fact that he likely will be back, that he's been cooperating and been open about his involvement from the beginning, you can take that into consideration in the 3553 considerations which the Court must undertake.

I've been asking for this, some judges anticipate and they tell the client, by the way, you know, I'm going to give you something off, but if the Government comes back later on with a formal, I'm going to consider the fact that I gave you some time off, what I call super acceptance, in other words, you get three points for acceptance of responsibility, if you come clean, if you give information, which the Government is going to investigate, I think that's super acceptance and it gives the Court a legal grounding to deviate somewhat from the guidelines, whatever you think is appropriate, if you think it's appropriate.

Later on, when he comes back on a Rule 35, which I expect will happen, the Court can say, you know, I already gave you such and such, so even though the Government is asking for 33 percent, you know, I'm going to include that time I gave you ahead of time.  Things happen, Judge.  So if I can get something

ahead of time for my client, I always ask for it because you never know what can happen. However, I do believe, I have to tell you that we will be back sometime before the Court with a reduction of sentence from the Government. I'm real confident of that. I think that's all I have to say.

THE COURT: What do you want to say, Mr. Angulo, before I sentence you, sir?

DEFENDANT ANGULO MOSQUERA: I would like to apologize to the United States of America, to the state and to Your Honor to forgive me for my ignorance.

THE COURT: What do you mean your ignorance?

DEFENDANT ANGULO MOSQUERA: Well, I haven't studied, Your Honor, and I am a person of meager means. I am poor.

THE COURT: Well, but you don't have to apologize for that. That's just part of life. So what you have to apologize for is the fact that you've done this again. That's what you've got to apologize for.

So the issue is what do I do about cooperation which was not present with the other defendant, right?

MR. SCHUSTER: That's correct, Your Honor.

THE COURT: All right. So with the guidelines being 188 to 235 months, the issue is, should I take into consideration his cooperation within this case. I will not take into consideration the cooperation with the other case or the second subsequent case, that I leave up to you all to do with a

Rule 35, if appropriate.

However, I do think that individuals who cooperate in the case, even if it's not sufficient to convince a prosecutor, because most prosecutors, it seems like the policy is to do everything in one package, and that sometimes takes too long. Congress says we should give breaks to individuals who cooperate and I follow congressional analysis for that and that's what we should do as federal judges. So I will give him a reduction from the 188 months exclusively because he cooperated. The issue is how much. I will not give it to him for what he's going to do, that's separate. So the issue is, how much should he get for this cooperation from 188, and I think a sentence down to 135 months is reasonable for his cooperation here. So I'm reducing it from 188 to 135 because he cooperated in this case.

It is the judgment of this Court that you, Alfonso Angulo Mosquera, be committed to the custody of the Bureau of Prisons for 135 months. Upon release from imprisonment, you'll be placed on supervised release for five years, $100 special assessment, no fine. When you get your Rule 35 filed, you will not be here, but I'll be here, your lawyer and the prosecutor, and your sentence will be reduced based upon your cooperation in those cases to whatever is reasonable under the circumstances.

Now, did he give up the right to appeal?

MR. SURI: Judge, I can't remember right now, I'm

sorry, but I have no objections to the Court's finding.

THE COURT: Do you want to appeal this sentence since you're cooperating and you've got less than the bottom of the guidelines, Mr. Angulo?

DEFENDANT ANGULO: No, Your Honor.

THE COURT: Has anyone forced you to give up the right to appeal?

DEFENDANT ANGULO MOSQUERA: No, Your Honor.

THE COURT: I find that the waiver of appellate rights was freely and voluntarily entered and that you're represented by competent counsel with whom you have expressed satisfaction.

THE COURT: All right. Thank you.

MR. SCHUSTER: Thank you.

MR. SURI: Your Honor, have a nice day. Always good to see you, sir.

THE COURT: Sorry it took so long.

MR. SURI: No, not at all.

(The hearing was concluded at 12:00 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

____02-12-23____    _____
    DATE            GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
                    Official United States Court Reporter
                    Wilkie D. Ferguson Jr. U.S. Courthouse
                    400 North Miami Avenue, Suite 12-2
                    Miami, Florida  33128    305.523.5118
                    gphofficialreporter@gmail.com